

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
09/17/2013

| | | |
|---|---|---|
| IN RE: § | | |
| ST. MARIE CLINIC PA § | CASE NO: 10-70802 | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| WILLIAM G. WEST § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 12-07002 | |
| § | | |
| ROEL "ROBIE" FLORES; dba THE FIRM § | | |
| OF ROEL "ROBIE" FLORES, *et al* § | | |
|     Defendant(s) § | | |
| § | | |

## MEMORANDUM OPINION

Chapter 7 Trustee, William G. West's Motion for Summary Judgment (ECF No. 68), is granted, in part, and denied, in part. Mr. West seeks: (1) the avoidance of numerous pre and post-petition transfers; (2) a declaratory judgment that the transferred property is property of the estate; (3) an order for turnover and/or imposition of a constructive trust on the transferred funds; and/or (4) a judgment against the remaining defendants. Summary judgment on the avoidance of the pre-petition transfers is granted, in part, and denied, in part. Summary judgment on the avoidance of the post-petition transfers is granted, in part, and denied, in part.

Pursuant to 11 U.S.C. § 550(a), Mr. West may recover the value of fraudulently transferred property.[1] Summary judgment against Dr. Carrillo is granted, in the amount of $197,450.00. Summary judgment against Heberto Carrillo, as Trustee of the Carrillo Children

---

[1] 11 U.S.C. §550(a) provides that the trustee may either recover the fraudulently transferred property, or recover the value of the transfers. Because the transfers were money transfers, the Court will issue a judgment for the value of the transfers.

Trust, is granted in the amount of $33,865.36.  Summary judgment against Martha Medrano is granted in the amount of $27,000.00.

## Background

St. Marie Clinic, P.A.  filed a voluntary Chapter 11 Petition on November 11, 2010.  ECF No. 68 at 4.  On September 2, 2011, the case was converted to one under Chapter 7.  ECF No. 68 at 4.  St. Marie operated a health care facility in Hidalgo County, Texas.  Case No. 10-70802 ECF No. 106 at 2.  Dr. Eduardo Carrillo, was the founder and principal of St. Marie.  ECF No. 68 at 5.  Dr. Carrillo was St. Marie's attending physician until June 13, 2011.  ECF No. 1 at 2.

On March 4, 2011, St. Marie and its creditors agreed to the entry of an Order For The Appointment of an Examiner Pursuant to 11 U.S.C. §1104(c).  Case No. 10-70802, ECF No. 172.  On March 14, 2011, Michael B. Schmidt was appointed Examiner.  Case No. 10-70802, ECF No. 172.  The Court ordered the Examiner to: (i) perform the duties set forth in 11 U.S.C. §1106(a)(3) and (4); (ii) investigate the Debtor's relationship, loans and other transactions with any non-debtor insider entity owned in whole or in part by Dr. Carrillo for the four year period prior to the Debtor's bankruptcy filing; and (iii) review and approve any proposed disbursement by the Debtor in the amount of $500.00 or more.  Case No. 10-70802, ECF No. 172.

During the course of his duties, Mr. Schmidt discovered that Dr. Carrillo regularly withdrew large sums of money from St. Marie and as a result, St. Marie was not making a monthly profit.  ECF No. 68 at 4.  Mr. Schmidt also discovered many questionable transactions that personally benefited Dr. Carrillo and others closely associated with him.  ECF No. 68 at 4.

On April 8, 2011, the Court issued an order finding Dr. Carrillo in contempt for making disbursements of greater than $500.00 without first seeking Mr. Schmidt's approval.  Case No. 10-70802, ECF No. 260.  The Court expanded Mr. Schmidt's powers as Examiner, vesting him

with the sole authority to investigate, compromise, initiate, and pursue litigation. Case No. 10-70802, ECF No. 260.

On June 1, 2011, the Court approved the appointment of Mr. West as Chapter 11 Trustee. Case No. 10-70802, ECF No. 365. After the conversion to Chapter 7, Mr. West was appointed the Chapter 7 Trustee. Case No. 10-70802, ECF No. 469. Mr. West investigated the transfers made by St. Marie during the two-years prior to the Petition Date. ECF No. 68 at 5. Mr. West also examined the available financial records regarding transfers made for the period of time that St. Marie operated in a Chapter 11. ECF No. 68 at 5. As a result of this investigation, Mr. West learned that Dr. Carrillo caused St. Marie to transfer large amounts of money to himself or others for his own benefit both pre and post-petition. Case No. 12-7002, ECF No. 68 at 5. Mr. West initially filed two adversary proceedings related to the fraudulent transfers. On August 18, 2012, the Court granted Mr. West's motion to consolidate Adversary Proceeding No. 11-7017 with this adversary proceeding. ECF No. 40.

## Adversary Case No. 11-7017

On September 13, 2011, Mr. West filed a Complaint to Avoid Fraudulent Transfers against Dr. Carrillo, Martha Medrano, Bert Ogden McAllen Motors, and Spikes Ford Motor Co. Inc. Case No. 11-7017, ECF No. 1. Mr. West has settled with all defendants except Dr. Carrillo and Martha Medrano. ECF No. 68 at 5.

### Dr. Carrillo

Mr. West seeks to avoid approximately $157,600.00 in pre-petition transfers that were made between December 2009 and November 2010, and approximately $37,850.00 in post-petition transfers that were made between November 2010 and March 2011. ECF No. 68. The

transfers were made from St. Marie's accounts in the form of checks to Dr. Carrillo's personal account, or to entities and individuals with which Dr. Carrillo was affiliated. ECF No. 68.

The pre-petition transfers were as follows:

- $59,500.00 between December 2009 and September 2010 in the form of checks made payable to cash. ECF No. 68 at 5.

- $14,000.00 to Dr. Carrillo on February 17, 2010. ECF No. 68 at 6.

- $5,000.00 to EMC Investments on March 15, 2010.[2] ECF No. 68 at 6.

- $5,000.00 to Nguyen & Del Barrio, PLLC on June 24, 2010. ECF No. 68 at 7.

- $7,500.00 to Encanto Enterprises on January 28, 2010.[3] ECF No. 68 at 7.

- $23,100.00 between November 2009 and September 2010 in the form of checks made payable to petty cash. ECF No. 68 at 7.

- $43,500.00 between April 2010 and November 2010 to Elizabeth Carrillo. ECF No. 68 at 8.

The post-petition transfers were as follows:

- $10,750.00 between November 2010 and March 2011 in the form of checks made payable to cash. ECF No. 68 at 6.

- $7,500.00 to EMC Investments in January 2011. ECF No. 68 at 7.

- $8,600.00 between December 2010 and March 2011 in the form of checks made payable to petty cash. ECF No. 68 at 7-8.

- $11,000.00 to Elizabeth Carrillo between November 2010 and December 2010. ECF No. 68 at 8.

**Martha Medrano**

Mr. West sought to avoid $27,000.00 in pre-petition transfers made to Martha Medrano in March 2010. ECF No. 68 at 9. The transfers were made from St. Marie's account in the form

---

[2] Dr. Carrillo is the principal of EMC Investments. ECF No. 50 at 7.

[3] Dr. Carrillo is the principal of Encanto Enterprises. ECF No. 50 at 7.

4 / 20

of checks made payable to Ms. Medrano. ECF No. 68 at 9. The checks were memorialized as being for interior decoration and furniture for Dr. Carrillo's home. ECF No. 68 at 9. Mr. West alleged that St. Marie received no consideration for the transfers. ECF No. 68 at 9. In his deposition on March 15, 2012, Dr. Carrillo asserted that the payments to Ms. Medrano were not fraudulent transfers because, although he was receiving a paycheck from St. Marie, he was not cashing his check. ECF No. 68-11 at 7. Because he was not paying himself, Dr. Carrillo felt justified in paying Ms. Medrano from St. Marie's accounts for interior decoration services for his home. ECF No. 68-11 at 7.

On December 23, 2011, Ms. Medrano filed her original answer to Mr. West's complaint to Avoid Fraudulent Transfers. Case No. 11-7017, ECF No. 25.

## Adversary Case No. 12-07002

On February 2, 2012, Mr. West filed a Complaint to Avoid Fraudulent Transfers against Roel "Robie" Flores, G&M Real Estate, Jim Moffitt, Geronimo Garcia, Carlos Cisneros, Dr. Carrillo, Trustee for the Carrillo Children Trust,[4] Elizabeth Carrillo, and Dr. Carrillo. ECF No. 1. Mr. West has settled with all other defendants except Dr. Carrillo and Heberto Carrillo. ECF No. 68 at 5.

### Heberto Carrillo, Trustee for the Carrillo Children Trust

Mr. West sought to avoid $33,865.36 in pre-petition transfers made to Heberto Carrillo, acting as Trustee of the Carrillo Children Trust, between December 2008 and May 2010. ECF No. 30 at 6. The transfers were made from St. Marie's account in the form of checks made payable to the Carrillo Children Trust. ECF No. 30 at 6.

---

[4] Mr. West's original Complaint incorrectly listed Dr. Carrillo as the Trustee for the Carrillo Children Trust. On June 12, 2012, Mr. West filed his First Amended Complaint, listing the correct Trustee for the Carrillo Children Trust, Heberto Carrillo Jr., as a defendant. ECF No. 30.

On August 1, 2012, Heberto Carrillo filed his answer to Mr. West's First Amended Complaint to Avoid Fraudulent Transfers. ECF No. 38.

### Dr. Carrillo

Mr. West alleged that Dr. Carrillo caused or participated in the events that caused all of the transfers to occur and should be held liable for all transfers. ECF No. 30 at 7. Mr. West requested that: (1) the Court declare that all of the transferred property was property of the Bankruptcy Estate; (2) require turnover of the property and all proceeds from the property; (3) impose a constructive trust in favor of the Bankruptcy Estate on the funds transferred; and (4) issue a judgment against Dr. Carrillo for the value of the property. ECF No. 30 at 7.

On March 13, 2012, Dr. Carrillo filed his original answer to Mr. West's Complaint to Avoid Fraudulent Transfers. ECF No. 7.

## Consolidated Adversary Case No. 12-07002

On August 18, 2012, the Court granted Mr. West's motion to consolidate Case No. 11-7017 into Case No. 12-7002. ECF No. 40.

On April 24, 2013, Mr. West filed his Second Amended Complaint to Avoid Fraudulent Transfers. ECF No. 50. No party has filed an answer to Mr. West's Second Amended Complaint.

On June 14, 2013, Mr. West filed this motion for summary judgment. ECF No. 68. Mr. West seeks: (1) avoidance of all the transfers discussed above; (2) a declaratory judgment that the property is property of the estate; (3) an order for turnover and/or imposition of a constructive trust on the transferred funds; and/or (4) judgment against the various defendants as follows:

    a.        Dr. Eduardo Carrillo: $256,315.36;[5]

    b.        Heberto Carrillo, Trustee of the Carrillo Children Trust: $33,865.36; and

    c.        Martha Medrano: $27,000.00.

To date, no party has filed a response.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Summary Judgment Standard

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is

---

[5] This figure includes the transfers to Ms. Medrano and Heberto Carrillo.

genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[6] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,

---

[6] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

### A)     Pre-petition fraudulent transfers

11 U.S.C. § 548(a)(1) provides that the trustee may avoid any transfer or obligation: (1) incurred by the debtor; (2) within two years before the petition date; (3) for which the debtor received less than reasonably equivalent value; and (4) which was made when the debtor was insolvent, or which rendered the debtor insolvent. Under 11 U.S.C. § 550(a), to the extent a transfer is avoided under § 548, the trustee may recover the transferred property either from the initial transferee or the entity for whose benefit the transfer was made.

#### a)     Dr. Eduardo Carrillo

##### i)     Pre-Petition Cash Transfers

Mr. West seeks to avoid $59,500.00 in pre-petition transfers that were made from St. Marie's accounts in the form of checks between December 2009 and September 2010. Each of the checks is made payable to cash and contains Dr. Carrillo's signature. ECF No. 68-6 at 1-21. All transfers occurred within two years of St. Marie filing bankruptcy. ECF No. 68-6 at 1-21.

The summary judgment evidence submitted by Mr. West includes the sworn affidavit of Mr. West's CPA, William Potter. ECF No. 68-22. Mr. Potter's affidavit states that he analyzed St. Marie's QuickBooks accounting files. ECF No. 68-22 at 1. His analysis of the QuickBooks reflects that Dr. Carrillo was paid hundreds of thousands of dollars for services rendered during the time period in question. ECF No. 68-22 at 1-2. The funds received in these transactions are over and above the amounts Dr. Carrillo received for his services to St. Marie. ECF No. 68-22 at 2. This evidence indicates that St. Marie did not receive reasonably equivalent value for the transfers. Mr. West is entitled to rely on Mr. Potter's examination of the books and records. *See, e.g. Babbit v. Scwartz (In re Lollipop, Inc.)*, 205 B.R. 682, 687 (Bankr. E.D.N.Y. 1997). Additionally, the movant may sustain his or her burden of proof by showing that little or no evidence supports the non-movant's case. *Id*. Due to Dr. Carrillo's failure to respond in the face of a sworn affidavit, Mr. West has sustained his burden of showing that St. Marie did not receive reasonably equivalent value for the transfers. *Id*.

Mr. Potter's affidavit states that he analyzed the financial records of St. Marie, and reviewed St. Marie's QuickBooks accounting files. ECF No. 68-22 at 1. Based on this examination, Mr. Potter concluded that St. Marie was insolvent at the time that all of the transfers were made. ECF No. 68-22 at 2. Mr. West is entitled to rely on Mr. Potter's examination of the books and records. *See, e.g. In re Lollipop, Inc.*, 205 B.R. at 687. Additionally, due to Dr. Carrillo's failure to respond in the face of a sworn affidavit, Mr. West has sustained his burden of showing insolvency. *Id*. Summary judgment is granted with respect to the pre-petition cash transfers totaling $59,000.00.

### ii) Pre-Petition Petty Cash Transfers

Mr. West seeks to avoid $23,100.00 in pre-petition transfers that were made from St. Marie's accounts in the form of checks between November 2009 and September 2010. Mr. West produced authentic copies of the original checks. ECF No. 68-6 at 35-41. Each of the checks is made payable to petty cash and contains Dr. Carrillo's signature. ECF No. 68-6 at 35-41. All transfers occurred within two years of St. Marie filing bankruptcy. ECF No. 68-6 at 35-41. As discussed *supra*, Mr. West has sustained his burden of showing that St. Marie did not receive reasonably equivalent value for the transfers, and that St. Marie was insolvent at the time of these transactions. Summary judgment is granted for the pre-petition petty cash transfers totaling $23,100.00.

### iii) Pre-Petition Transfer to Personal Account

Mr. West seeks to avoid a $14,000.00 pre-petition transfer that was made from St. Marie's accounts in the form of a check in February 2010. Mr. West produced an authentic copy of the original check. ECF No. 68-6 at 27. The check is made payable to Eduardo Carrillo M.D. and contains Dr. Carrillo's signature. ECF No. 68-6 at 27. The transfer occurred within two years of St. Marie filing bankruptcy. ECF No. 68-7 at 27. As discussed *supra*, Mr. West has shown that St. Marie did not receive reasonably equivalent value for this transaction, and that St. Marie was insolvent at the time of the transaction. Summary judgment is granted for the pre-petition transfer of $14,000.00.

### iv) Pre-Petition Transfers to Related Businesses

Mr. West seeks to avoid $17,500.00 in pre-petition transfers that were made from St. Marie's accounts in the form of checks between January 2010 and June 2010. These transfers include: (1) a temporary check for $5,000.00, issued on March 15, 2010, from St. Marie to EMC

Investments; (2) Check 8308 for $5,000.00, issued on June 24, 2010, to Nguyen & Del Barrio, PLLC to defend EMC in a lawsuit; and (3) a temporary check for $7,500.00 issued on January 28, 2012 to Encanto Enterprises.  Mr. West produced authentic copies of the original checks.  ECF No. 68-6 at 28-31.  Each of the checks is made payable to a related business and contains Dr. Carrillo's signature.  ECF No. 68-6 at 28-31.  All transfers occurred within two years of St. Marie filing bankruptcy.  ECF No. 68-6 at 28-31.  These transactions were made to aid EMC and Encanto in their business dealings.  St. Marie received no value for these transactions.  As discussed *supra*, Mr. West has shown that St. Marie was insolvent at the time of these transfers.

Although Dr. Carrillo is the principal of EMC Investments and Encanto Enterprises, Mr. West has not shown how Dr. Carrillo individually benefitted from the transfers to these entities. The same is true for the transfer to Nguyen & Del Barrio, PLLC.  The money was transferred to the firm for services rendered to EMC, but there is no evidence that Dr. Carrillo personally benefited from the transfer.   Because EMC, Encanto and Nguyen & Del Barrio are not defendants in this action, and because Mr. West has not shown that Dr. Carrillo personally benefited from these transactions, summary judgment is denied with respect to the transfers to these related businesses.

v) **Pre-Petition Transfers to Elizabeth Carrillo**

Mr. West seeks to avoid $43,500.00 in pre-petition transfers that were made from St. Marie's accounts in the form of checks between April 2010 and November 3, 2010.  Mr. West produced authentic copies of the original checks.  ECF No. 68-15 at 1-10.  Each of the checks is made payable to Elizabeth Carrillo and contains Dr. Carrillo's signature.  ECF No. 68-15 at 1-10. All transfers occurred within two years of St. Marie filing bankruptcy.  ECF No. 68-15 at 1-10. The "memo" on each of the checks, except for check 9058, indicates that the check was payable

to Elizabeth Carrillo. Check 9058 indicates that it is for a monthly child support payment. ECF No. 68-15 at 8. Ms. Carrillo's testimony from her deposition taken on October 19, 2010, indicates that she was receiving $11,000.00 in spousal and child support each month from Dr. Carrillo.[7] ECF No. 68-14 at 3. Although only check 9058 enumerates that its purpose was for child support, the check issued in April 2010 was for $11,000.00, the two checks issued in July 2010 total 11,000, the two checks issued in September 2010 total $10,500.00, and the two checks issued in October and November 2010 total $11,000. ECF No. 68-22 at 3. Additionally, Mr. Potter's sworn affidavit, which indicates that St. Marie did not receive reasonably equivalent value for these transfers, was not refuted by Dr. Carrillo. This evidence is sufficient to show that St. Marie did not receive reasonably equivalent value for any of the transfers to Ms. Carrillo. As discussed *supra*, Mr. West has sufficiently shown that St. Marie was insolvent at the time of these transactions. Additionally, these transfers were for the benefit of Dr. Carrillo, as they were made to satisfy his child support obligation. Summary judgment is granted with respect to the $43,500.00 in pre-petition transfers to Ms. Carrillo.

      **b)     Heberto Carrillo, Trustee of the Carrillo Children Trust**

            **i)     Pre-Petition Transfers to the Carrillo Children Trust**

Mr. West seeks to avoid $33,865.36 in pre-petition transfers that were made from St. Marie's accounts in the form of checks between December 2008 and May 2010. Mr. West produced authentic copies of the original checks. ECF No. 68-2 at 1-6. Each of the checks is made payable to the Carrillo Children Trust and contains Dr. Carrillo's signature. ECF No. 68-2 at 1-6. All transfers occurred within two years of St. Marie filing bankruptcy. ECF No. 68-2 at

---

[7] Ms. Carrillo's deposition testimony also indicates that she was the executive administrator at St. Marie. ECF No. 68-14 at 6. It is plausible that the transfers to Ms. Carrillo could be related to her role at St. Marie. However in the absence of a response to refute Mr. Potter's affidavit, the Trustee has met his burden of showing that St. Marie did not receive reasonably equivalent value.

1-6. These payments were all made to the Carrillo Children Trust—St. Marie received no reasonably equivalent value for these transfers. As discussed *supra*, Mr. West has shown that St. Marie was insolvent when these transfers were made.

Summary judgment against Heberto Carrillo, as Trustee of the Carrillo Children Trust, is granted with respect to the $33,856.36 in pre-petition transfers to the Carrillo Children Trust.

Summary judgment against Dr. Carrillo is denied with respect to these transactions. Mr. West has not shown that Dr. Carrillo personally benefitted from the transactions, but has only shown that Dr. Carrillo's children have personally benefited. Without evidence that Dr. Carrillo personally benefited, the transfers may not be recovered from him.

    c)    **Martha Medrano**

        i)    **Pre-Petition Transfers to Martha Medrano**

Mr. West seeks to avoid $27,000.00 in pre-petition transfers that were made from St. Marie's accounts in the form of checks between March 2010 and May 2010. Mr. West produced authentic copies of the original checks. ECF No. 68-12 at 1-6. Each of the checks is made payable to Martha Medrano and contains Dr. Carrillo's signature. ECF No. 68-12 at 1-6. All transfers occurred within two years of St. Marie filing bankruptcy. ECF No. 68-12 at 1-6. Summary judgment is granted with respect to these factors.

In his deposition on March 15, 2012, Dr. Carrillo asserted that the payments to Ms. Medrano were not fraudulent transfers because although he was receiving a paycheck from St. Marie, he was not cashing his check. ECF No. 68-11 at 7. Because he was not paying himself, Dr. Carrillo felt justified in paying Ms. Medrano from St. Marie's accounts for interior decoration services for his home. ECF No. 68-11 at 7. Dr. Carrillo's testimony essentially claims a setoff for amounts of his salary owed to him. There is no summary judgment evidence

regarding Dr. Carrillo's salary. However, any amount that Dr. Carrillo is, in fact, owed is a pre-petition claim against the estate. It cannot be set-off in this manner, but must be filed like any other claim. *See, e.g. Walker v. Wilkinson*, 296 F. 850, 852 (5th Cir. 1924) (in preference action, creditor cannot set off against his liability the original debt on which the payments were applied); *see also Singh, et al. v. Sooklall (In re Singh)*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010) (it is well established that a party is unable to assert a setoff where it is being sued for fraudulent transfers).

Additionally, Dr. Carrillo's deposition testimony is refuted by Mr. Potter's Affidavit which states that Dr. Carrillo received hundreds of thousands of dollars for his services to St. Marie. Summary judgment is granted with respect to this factor. As discussed, *supra*, Mr. West has shown that St. Marie was insolvent at the time of these transfers.

Summary judgment is granted against Martha Medrano with respect to the $27,000.00 in pre-petition transfers to Ms. Medrano.

Summary judgment is further granted against Dr. Carrillo for the $27,000.00 in pre-petition transfers to Ms. Medrano. Ms. Medrano was paid for interior decoration services for Dr. Carrillo's home, thus Dr. Carrillo was a beneficiary of the transactions and Mr. West can recover this amount from him under § 550(a).

B)   **Post-petition fraudulent transfers**

Under 11 U.S.C. § 549(a), a post-petition transfer of estate property is avoidable upon a showing that an unauthorized transfer of estate property occurred after commencement of the case. Under 11 U.S.C. § 550(a), to the extent a transfer is avoided under § 549, the trustee may recover the transferred property either from the initial transferee or the entity for whose benefit the transfer was made.

      **a)**      **Dr. Eduardo Carrillo**

      **i)**      **Post-Petition Cash Transfers**

Mr. West seeks to avoid $10,750.00 in post-petition transfers that were made from St. Marie's accounts in the form of checks payable to cash on November 18, 2010, February 11, 2011, February 19, 2011 and March 30, 2011. ECF No. 68-6 at 22- 26. Mr. West produced authentic copies of all the original checks. ECF No. 68-6 at 22- 26. Each of the checks is made payable to cash, contains Dr. Carrillo's signature, and was negotiated after the petition date. ECF No. 68-6 at 22-26. It is undisputed that the transferred property was property of the Estate.

From the Petition Date, November 11, 2010, until Mr. West's appointment, St. Marie operated as a debtor-in-possession. Under 11 U.S.C. § 1108, a debtor-in-possession is authorized to operate the business of the estate. Additionally, under 11 U.S.C. § 363(b), a debtor-in-possession may use, sell, or lease property of the estate other than in the ordinary course of business. In order for the debtor-in-possession to satisfy its' fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside of the ordinary course of business. *ASARCO, L.L.C. v. Elliott Management, et al. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601. Upon the appointment of Mr. Schmidt on March 4, 2011, St. Marie's ability to operate as a debtor-in-possession was limited, as St. Marie had to seek authorization from Mr. Schmidt for any transfer of more than $500.

Three of these transfers took place prior to Mr. Schmidt or Mr. West being appointed, while St. Marie operated purely as a debtor-in-possession, and did not need to seek approval for any of its transfers. Pursuant to Mr. Potter's affidavit, these transfers were over and above the amounts Dr. Carrillo received for his services to St. Marie. These transfers were therefore

unauthorized because they were not made in the ordinary course of operating the business, and no business justification for the transfers has been proffered. The $10,750.00 in post-petition transfers made between November 18, 2010 and March 2011 are avoidable fraudulent transfers under 11 U.S.C. § 549(a). Summary judgment is granted with respect to the post-petition cash transfers.

### ii) Post-Petition Petty Cash Transfers

Mr. West seeks to avoid $8,600.00 in post-petition transfers that were made from St. Marie's accounts in the form of checks on November 19, 2010, December 1, 2010, December 18, 2010, and March 23, 2011. ECF No. 68-6 at 42-45. Mr. West produced authentic copies of all the original checks. ECF No. 68-6 at 42-45. Each of the checks is made payable to petty cash, contains Dr. Carrillo's signature, and was negotiated after the petition date. ECF No. 68-6 at 42-45. It is undisputed that the transferred property was property of the Estate. Three of these transfers took place prior to Mr. Schmidt or Mr. West being appointed, while St. Marie operated purely as a debtor-in-possession, and did not need to seek approval for any of its transfers. Pursuant to Mr. Potter's affidavit, these transfers were over and above the amounts Dr. Carrillo received for his services to St. Marie. These transfers were therefore unauthorized because they were not made in the ordinary course of operating the business, and no business justification for the transfers has been proffered. The $8,600.00 in post-petition transfers made between November 11, 2010 and March 2011 are avoidable under 11 U.S.C. § 549(a). Summary judgment is granted with respect to the $8,600.00 in post-petition transfers.

### iii) Post-Petition Transfers to a Third Party Business

Mr. West seeks to avoid $7,500.00 in post-petition transfers that were made from St. Marie's accounts in the form of two checks to Encanto Enterprises in January 2011. Mr. West

produced authentic copies of the original checks. ECF No. 68-6 at 33-34. Each of the checks was made payable to Encanto Enterprises and contains Dr. Carrillo's signature. ECF No. 68-6 at 33-34. It is undisputed that the property transferred was property of the Estate. These transfers took place prior to Mr. Schmidt or Mr. West being appointed, while St. Marie operated purely as a debtor-in-possession, and did not need to seek approval for any of its transfers. The transfers to Encanto were unauthorized however, because they were not made in the ordinary course of operating St. Marie, and no business justification for the transfers has been proffered. The $7,500.00 in transfers made in January 2011 are avoidable under 11 U.S.C. § 549(a).

Although the transfers are avoidable under § 549, Mr. West has failed to show that Dr. Carrillo personally benefited from the transactions. Dr. Carrillo is the principal of Encanto, but it is not clear from the summary judgment evidence that Dr. Carrillo received a personal benefit from the transfers. Summary judgment is denied with respect to these transfers.

### iv) Post-Petition Transfers to Elizabeth Carrillo for Child Support

Mr. West seeks to avoid $11,000.00 in post-petition transfers made from St. Marie's accounts in the form of checks to Elizabeth Carrillo in November and December 2010. Mr. West produced authentic copies of the original checks. ECF No. 68-15 at 9-10. Each of the checks is made payable to Elizabeth Carrillo, contains Dr. Carrillo's signature, and was negotiated after the petition date. ECF No. 68-15 at 9-10. It is undisputed that the property transferred was property of the Estate. These transfers took place prior to Mr. Schmidt or Mr. West being appointed, while St. Marie operated purely as a debtor-in-possession, and did not need to seek approval for any of its transfers. However, these transfers to Ms. Carrillo were made for child support payments, as the memo on both checks indicates. These transfers were unauthorized because they were not made in the ordinary course of operating the business, and no business

justification has been proffered. It is apparent that Dr. Carrillo was a beneficiary of these transactions as they were made to satisfy his child support obligation. The $11,000.00 in transfers to Ms. Carrillo in November and December 2010 are avoidable under 11 U.S.C. § 549(a). Summary judgment is granted with respect to these transfers.

## Conclusion

The following chart summarizes the Court's ruling:

| **Summary Judgment Granted** | **Summary Judgment Denied** |
|---|---|
| **Dr. Eduardo Carrillo** | |
| **Pre-Petition** | |
| $59,500.00 in checks made payable to cash between December 2009 and September 2010 | $5,000.00 to EMC Investments on March 15, 2010 |
| $14,000.00 to Dr. Carrillo on February 17, 2010 | $5000.00 to Nguyen & Del Barrio, PLLC on June 24, 2010 |
| $23,100.00 in checks made payable to petty cash between November 2009 and September 2010 | $7,500.00 to Encanto Enterprises on January 28, 2010 |
| $43,500.00 to Elizabeth Carrillo between April 2010 and November 2010 | $33,865.36 to Heberto Carrillo as Trustee of the Carrillo Children Trust between December 2008 and May 2010 |
| $27,000.00 to Martha Medrano in March 2010 | |
| **Post-Petition** | |
| $10,750.00 in checks made payable to cash between November 2010 and March 2011 | $7,500.00 to EMC Investments in January 2011 |
| $8,600.00 in checks made payable to petty cash between December 2010 and March 2011 | |
| $11,000.00 to Elizabeth Carrillo between November and December 2010. | |
| **Total: $197,450.00** | **Total: $58,865.36** |

| Summary Judgment Granted | Summary Judgment Denied |
|---|---|
| **Heberto Carrillo, as Trustee of the Carrillo Children Trust** | |
| **Pre-Petition** | |
| $33,865.36 to Heberto Carrillo as Trustee of the Carrillo Children Trust between December 2008 and May 2010 | |
| **Total: $33,865.36** | |
| **Martha Medrano** | |
| **Pre-Petition** | |
| $27,000.00 in March 2010 | |
| **Total: $27,000.00** | |

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **September 17, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE